**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RALPH C. MICHAEL, | : | |
| **Plaintiff** | : | No. 1:15-cv-02230 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| GLD FOREMOST HOLDINGS, | : | |
| LLC <u>et al.</u>, | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This matter is presently before the Court on a motion to dismiss Counts II and III of

Plaintiff Ralph C. Michael's complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules

of Civil Procedure, filed by Defendants GLD Foremost Holdings, LLC ("Defendant GLD"), and

Daniel Gordon ("Defendant Gordon"), on January 22, 2016.  (Doc. No. 8.)  Having considered

the arguments raised by the parties in their respective briefs and the applicable law governing

this breach-of-contract action, for the reasons provided herein, the Court will grant Defendants'

motion for partial dismissal of Plaintiff's complaint.

**I.      BACKGROUND[1]**

Plaintiff Ralph C. Michael, co-founder and exclusive stockholder of Foremost Industries,

Inc., a modular home manufacturing company headquartered in Franklin County, Pennsylvania

(the "Company"), resolved in 2012 to retire and sell his Company.  (Doc. No. 1 ¶¶ 6-9.)  Plaintiff

advertised the sale of the Company in the Wall Street Journal as an "asset sale" to potential

buyers.  (<u>Id.</u> at ¶ 10.)  In December of 2014, Defendant Daniel Gordon ("Gordon"), responded to

---

[1] The following factual allegations comprising this background section are taken directly from
Plaintiff's complaint and are accepted as true for purposes of this motion to dismiss. <u>See</u>
<u>Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir. 1997)
(explaining that "[w]hen reviewing a Rule 12(b)(6) dismissal, [the court] must accept as true the
factual allegations in the complaint and all reasonable inferences that can be drawn from them").

Plaintiff's advertisement, expressing an interest in acquiring the Company.  (Id. at ¶ 12.)  In January of 2015, Plaintiff and Gordon arranged for Gordon to visit the Company's corporate headquarters in Franklin County and tour its facilities.  (Id. at ¶ 13.)  At that visit, Plaintiff furnished Gordon with the Company's financial statements for the years 2012 and 2013.  (Id. at ¶ 15.)  Shortly thereafter, in February of 2015, Plaintiff and Gordon entered into exclusive negotiations for the purchase of Plaintiff's interest in the Company.  (Id. at ¶ 16.)  Following two additional visits to Company's facilities, Gordon made an initial offer to acquire the assets of the Company in a letter and an accompanying indicative term sheet dated February 4, 2015.  (Id. at ¶¶ 17-20.)  Specifically, Gordon's offer consisted of a $4 million cash payment and a charitable donation totaling 35 % of the Company's net income to an organization specified by Plaintiff. (Id. at ¶ 21.)  On March 30, 2015, Gordon presented Plaintiff with a draft Stock Purchase Agreement that outlined the terms and conditions of the anticipated purchase of all issued and outstanding shares of capital stock of the Company from Plaintiff. (Id. at ¶ 23.)

According to the complaint, throughout April and May of 2015, Gordon exhibited conduct that was perceived by Plaintiff as demonstrating a commitment to consummating the agreement to purchase the Company.  Specifically, on or about May 4, 2015, in anticipation of closing, Gordon incorporated Defendant GLD ("GLD"), as a Delaware limited liability company to purchase, own, and operate the Company.  (Id. at ¶¶ 31.)  During his recurrent visits to the Company's facilities in April and again in May of 2015, Gordon: represented to the Company's employees the type of health insurance plan he was going to offer upon obtaining possession of the Company; scheduled the auction of personal property belonging to the Company; and strategized the eventual engineering changes he would make to the Company.  (Id. at ¶¶ 28-29.)

Throughout this period, Gordon also repeatedly inquired into, and directed the disclosure of, certain financial information concerning the Company's operations as contemplated by the draft Stock Purchase Agreement, pursuant to which Plaintiff was required to prepare and submit schedules detailing, inter alia, the Company's operations, debts, liabilities, and income prior to closing.  (Id. at ¶ 30.)  Significantly, on April 2, 2015, Gordon questioned Laurie Myers ("Myers"), Plaintiff's daughter and the Company's treasurer and controller, regarding the consideration given for an anticipated sale of real property from the Company to her and her husband.  (Id. at ¶ 25.)  Myers informed Gordon that the purchase price for the real property totaled $100,000.00.  (Id. at ¶ 26.)  On April 10, 2015, Myers and her husband purchased the real property from the Company by deed, a copy of which was subsequently forwarded to Gordon via e-mail.  (Id. at ¶ 27.)

On May 11, 2015, Myers sent Gordon a draft of the completed schedules required by the draft Stock Purchase Agreement.  (Id. at ¶ 32.)  The finalized schedules were e-mailed to Gordon on May 14, 2015.  (Id. at ¶ 33.)  Plaintiff alleges that Gordon "made no objection concerning the adequacy of the information set forth on the schedules to [him] or to Myers" upon receipt.  (Id. at ¶ 34.)  As alleged by Plaintiff, while "[t]he parties tentatively agreed to close on the transaction on Monday May 18, 2015," the closing date was subsequently delayed due to Gordon proposing a series of changes to the draft Stock Purchase Agreement and demanding additional supporting documentation on May 15, and 26, 2015. (Id. at ¶¶ 36-40.)  In his e-mail correspondence with Myers the morning of May 26, 2015, Gordon indicated his intention to execute the Stock Purchase Agreement upon reviewing and finalizing the schedules and confirmed that he would be returning to the Company's corporate office the following day to "perhaps sign everything."  (Id. at ¶¶ 38, 40.)  That afternoon, however, Gordon informed Myers

via e-mail that he would not be able to close on the transaction as previously suggested because he was reviewing the schedules, awaiting additional information to be submitted by Plaintiff, and requiring an appraisal of real property owned by the Company.  (Id. at ¶ 41.)

On May 27, 2015, Gordon sent Myers an "Execution Version" of the Stock Purchase Agreement and notified Myers that he was prepared to proceed with the closing.  (Id. at ¶ 44.) On May 29, 2015, Gordon sent Myers finalized schedules for Plaintiff to review and initial.  (Id. at ¶ 46.)  The Stock Purchase Agreement and incorporated schedules were executed by Plaintiff that same day and mailed to Gordon via overnight courier.  (Id. at ¶ 47.)  Consequently, by Plaintiff's execution of the Stock Purchase Agreement, GLD received all of Plaintiff's rights, titles, and interests in the Company.   (Id. at ¶ 48.)

Plaintiff alleges that while the parties agreed to date the Stock Purchase Agreement as of May 29, 2015, Gordon did not counter-execute the Stock Purchase Agreement on behalf of GLD and return a copy to Plaintiff until August 19, 2015.  (Id. at ¶¶ 49, 57.)  According to Plaintiff, in that intervening period, Gordon, operating as GLD, took possession of the Company on or about June 7, 2015, and began dismantling it through an auction sale of the Company's assets scheduled for July 11, 2014.  (Id. at ¶¶ 53, 54.)   Moreover, Plaintiff avers that Gordon wired $1 million of the purchase price to Plaintiff on June 30, 2015 in contravention to the Stock Purchase Agreement, which stipulated that the purchase price of $3 million was to be remitted at closing. (Id. at ¶¶ 56, 58.)

On August 26, 2015, approximately one week after Gordon forwarded Plaintiff a copy of the executed Stock Purchase Agreement, Plaintiff received a letter from Gordon demanding rescission of the Stock Purchase Agreement on the basis that Plaintiff misrepresented the Company's financial position to Gordon.  (Id. at ¶¶ 59, 61.)  By Plaintiff's assessment, the letter

addressed numerous matters "well-known to Gordon prior to taking possession of the Company and executing the Stock Purchase Agreement, including but not limited to the sale of certain real estate to Myers and her husband."  (Id. at ¶ 60.)  On September 15, 2015, Plaintiff, through his counsel, responded to Gordon's letter and demanded payment of the remainder of the agreed-upon purchase price for the Company.  (Id. at ¶ 63.)  To date, Plaintiff has not received the remaining sums due to him pursuant to the Stock Purchase Agreement.  (Id. at ¶ 64.)

On November 20, 2015, Plaintiff initiated the above-captioned action by filing a three-count complaint against both Gordon and GLD to recover the difference in the purchase price memorialized in the Stock Purchase Agreement and the amount Plaintiff actually received as consideration.  (Doc. No. 1.)  Count I advances a breach of contract claim against GLD for failure to remit the remaining $2 million balance of the purchase price due to Plaintiff at closing.  (Id. at 11.)  Count II sets forth a "fraud" claim against Gordon arising out of his involvement in negotiations on behalf of GLD that culminated in the execution of the Stock Purchase Agreement.  (Id. at 12.)  Count III asserts an alternative claim of unjust enrichment against both GLD and Gordon, premised on Defendants' retention of the Company and the remaining $2 million owed to Plaintiff.  (Id. at 15.)  Defendants have moved for dismissal of Counts II and III of the complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 8.)  This motion has been fully briefed and is now ripe for disposition.

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires

"only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly

give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)). [2]

## III.   DISCUSSION

### A.   COUNT II: FRAUD[3]

Defendants move for dismissal of Count II of Plaintiff's complaint under Federal Rule 9(b) for failure to plead the several elements comprising a claim of fraudulent inducement with requisite specificity.  (Doc. No. 10 at 11-18.)  Fundamentally, Defendants contend that it is unclear from the complaint what actions purportedly taken, or statements allegedly made, by Gordon in the negotiation of the Stock Purchase Agreement constitute material

---

[2] In addition to the complaint in this matter (Doc. No. 1), the Court has taken judicial notice of exhibits Plaintiff has appended to his complaint, including the February 4, 2015 offer letter (Doc. No. 1-2), various e-mail correspondence between the parties (Doc. Nos. 1-3, 1-4), the Stock Purchase Agreement (Doc. No. 1-5), the August 26, 2015 dispute notice (Doc. No. 1-6), and the September 15, 2015 response to the dispute notice (Doc. No. 1-7). Consideration of these materials does not require conversion of the motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment under Federal Rule of Civil Procedure 56.  See Fed. R. Civ. P. 12(d).

[3] The parties have agreed that New York law governs this dispute.

misrepresentations upon which Plaintiff justifiably relied to his detriment, as there exist no

factual allegations concerning "times, places, or actual statements" made by Gordon in the

complaint.  (Id. at 13 n.2.)  Defendants further remark that the difficulty in defining the contours

of Plaintiff's fraud claim is compounded by the presence of non-actionable factual allegations of

representations made by Gordon (who is not a party to the Stock Purchase Agreement) that either

concern actions he said he would take in the future, or can only be fairly construed as statements

of mere opinion.

To maintain a cause of action for common law fraud or fraud in the inducement[4] pursuant

to New York law, the plaintiff must plead: "(1) a material misrepresentation or omission of fact

(2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable

reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v.

Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006); see also Gosmile, Inc. v. Levine, 915

N.Y.S.2d 521, 524 (N.Y. App. Div. 2010) ("To state a claim for fraudulent inducement, there

must be a knowing misrepresentation of material present fact, which is intended to deceive

another party and induce that party to act on it, resulting in injury.").  An action sounding in

fraud must also be pled with particularity as required by Rule 9(b) of the Federal Rules of Civil

Procedure.  See Fed. R. Civ. P. 9(b) (providing that, with respect to "allegations of fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

---

[4] Defendants note that while Count II is labelled "Fraud," Count II "actually appears to be drafted
as a fraudulent inducement count."  (Doc. No. 10.)  Regardless of how Plaintiff styles this count,
"[t]he pleading requirements for common law fraud and fraudulent inducement are identical."
380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 35 (S.D.N.Y. 2009) (citing
JHW Greentree Capital, L.P. v. Whittier Trust Co., No. 05 CIV. 2985(HB), 2006 WL 1080395,
at *7 (S.D.N.Y. Apr. 24, 2006)).

To satisfy Rule 9(b)'s heightened pleading standard, a complainant must "(1) specify the statements that [it] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks omitted).

Count II of Plaintiff's complaint, asserting a "fraud" claim against Gordon, consists of the following allegations:

72. Gordon obtained possession of the Company by representing that he was satisfied with the terms of the Stock Purchase Agreement, that he had performed all requisite due diligence prior to taking possession of the Company, and that he was satisfied with the representations, the information, the schedules, and the supporting materials provided to him  . . . .

73. The transfer of possession of the Company prior to closing and final payment is not contemplated by the terms and conditions of the Stock Purchase Agreement.

74. Gordon obtained possession of the Company by fraudulently inducing Michael into believing that Gordon intended to proceed with the sale of the Company by making a partial payment in accordance with the proposed Stock Purchase Agreement and based on the information provided to Gordon by Michael or on his behalf, about the Company.

75. Gordon represented to Michael that GLD was prepared to close on the transaction under the terms and conditions set forth in the Stock Purchase Agreement.

76. Once GLD obtained possession of the Company's assets, Gordon immediately arranged for the sale of Company assets and the dismantling of the Company.

77. As a result of Gordon's representations that GLD was prepared to complete the purchase of the Company from Michael, Michael surrendered possession of the Company to GLD prior to receipt of payment of the full purchase price.

78. It is believed and therefore averred that Gordon never obtained financing necessary for GLD to complete his purchase of the Property.

79. It is believed and therefore averred that Gordon had no intention of proceeding with the purchase of the Company, when GLD took possession of same and began dissipating Company assets.

. . .

84. Gordon's specious objections to the information provided during due diligence was manufactured to provide a basis for Gordon and GLDs refusal to make the remaining $2.0 million payment due to Michael in accordance with the terms and conditions of the Stock Purchase Agreement.

85. It is believed and therefore averred that Gordon's activities as described above herein were calculated to deceive Michael into transferring possession of the Company without making payment to Michael due and owing under the Stock Purchase Agreement so that he could dissipate Company assets for his personal benefit thereby causing substantial harm to Michael and the Company.

(Doc. No. 1 at 12-15.)

Assuming the truth of the complaint's allegations and construing all reasonable inferences to be drawn therefrom in Plaintiff's favor, the Court finds that Plaintiff has failed to plead with particularity the elements comprising a cause of action sounding in fraud.  As a threshold matter, the Court is persuaded by Defendants' position that the complaint is devoid of any particularized allegations as to the timing, context, and content of any statements purportedly made by Defendants that could conceivably satisfy Rule 9.  Plaintiff does not specify, nor can the Court readily discern, what statement of material fact Gordon is alleged to have made or concealed that forms the basis of Plaintiff's fraudulent inducement claim.  Moreover, Plaintiff does not indicate "how" and/or "why" any given statement or act alleged in the complaint amounts to a materially false representation of fact.  See Schwartzco Enterprises LLC v. TMH Mgmt., LLC, 60 F. Supp. 3d 331, 345 (E.D.N.Y. 2014) ("Plaintiffs [are not] relieved of their obligation at this stage of the litigation, to adequately allege 'how' and/or 'why' the statements

were fraudulent.").   Rather, Plaintiff generally posits that "Gordon obtained possession of the
Company [as a result of] fraudulently inducing [Plaintiff] into believing that Gordon intended to
proceed with the sale of the Company" (Doc. No. 1 ¶ 75), by implying through his statements
and conduct "that GLD was prepared to complete the purchase of the Company from Plaintiff."
(Doc. No. 1 ¶ 78); see also Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) ("[M]any
allegations of fraud are entirely conclusory and unsupported by assertions of facts.  For example,
the complaint alleges . . . that defendants made oral and written misrepresentations of their net
worth and their ability to make the partnership business successful.  Yet plaintiffs do not state
facts on which these allegations are based; there is no elaboration on what representations of net
worth were made or why those representations were false.").  Thus, Count II of the complaint is
subject to dismissal for failure to allege fraud with particularity as required by Rule 9(b).

        Moreover, the alleged acts and communications involving Gordon arguably at issue here
do not support a cognizable claim of fraud under Rule 12(b)(6).  By the Court's reading of the
complaint, Plaintiff premises liability on a theory that Gordon engaged in a fraudulent scheme to
lure Plaintiff into executing the Stock Purchase Agreement and prematurely divesting control
over the Company prior to an unspecified closing date by: (1) assuring Plaintiff that "he was
satisfied with the terms of the Stock Purchase Agreement, that he had performed all requisite due
diligence prior to taking possession of the Company, and that he was satisfied with the
representations, the information, the schedules, and the supporting materials provided to him;"
and (2) "making a partial payment in accordance with the proposed Stock Purchase Agreement."
Insofar as Plaintiff challenges the verbal statements and overt acts communicating Gordon's
approval of the negotiated terms of the Stock Purchase Agreement, such conduct does not
constitute a representation of fact, but rather, is nothing more than a manifestation of Gordon's

willingness to go forward with the transaction, which, by Plaintiff's own admission, was

eventually executed and received by Plaintiff on August 19, 2015.  (Doc. No. 1 ¶ 57); see, e.g.,

Schlaifer Nance & Co. v. Estate of Warhol, 927 F. Supp. 650, 661 (S.D.N.Y. 1996) ("[T]he

statement '[i]t's a go' was not a representation of fact but simply a statement that the Estate was

prepared to go forward with the transaction."), aff'd sub nom. 119 F.3d 91 (2d Cir. 1997);

Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 221 (S.D.N.Y. 2007) (noting that

statements communicating defendants' state of mind, such as what defendants are wishing,

hoping, thinking, or planning, do not constitute materially false representations and further

finding that "the belief that [plaintiff] may have extracted from the penumbra of [d]efendants'

conduct is not sufficient to form a material false representation"), aff'd, 354 F. App'x 496 (2d

Cir. 2009).[5]

---

[5] It bears noting that Plaintiff has advanced an argument in his oppositional brief to Defendants'
motion to dismiss that the suggestion of fraud to be derived from Gordon's statements and
conduct throughout the negotiation process is one of misrepresentation of intent.  (Doc. No. 13 at
17-19.)  According to Plaintiff, his fraud-based claim is grounded on the notion that Gordon
harbored an undisclosed intention to avoid compliance with the contractual obligations set forth
under the Stock Purchase Agreement when he made assurances and took affirmative actions to
bind GLD to a contractual arrangement. However, the Court finds this theory of liability to be
misplaced.  It is well settled that, to sustain a claim for fraudulent inducement, "the
misrepresentations alleged in the pleadings . . . must be misstatements of material fact or
promises made with a present, albeit undisclosed, intent not to perform them." Shlang v. Bear's
Estates Dev. of Smallwood, 599 N.Y.S.2d 141, 143 (N.Y. App. Div. 1993). While a "present
expression of . . . intent to perform a future act is actionable as fraud . . . if actually made with a
preconceived and undisclosed intention of not performing it," Tanzman v. La Pietra, 778
N.Y.S.2d 199, 201 (N.Y. App. Div. 2004), the New York Court of Appeals for the Second
Circuit has emphasized that the expression of intent must take the form of a promise. Century
Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 221 (S.D.N.Y. 2007), aff'd, 354 F. App'x
496 (2d Cir. 2009) ("The Second Circuit has focused on the fact of a promise constituting the
material false representation that gives rise to a claim for fraudulent inducement.") (citing
Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir.1992) ("[I]f a promise was actually made
with a preconceived and undisclosed intention of not performing it, it constitutes a
misrepresentation of material existing fact."); Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.
1994)).  In its detailed review of the complaint, the Court is hard pressed to find any alleged
statement or action that explicitly, let alone implicitly, coveys a promise made by Gordon to
perform an act in the future.

Notwithstanding the pleading deficiencies identified by Defendants in their motion to dismiss, the Court observes a more fundamental defect in the framing of Plaintiff's fraud claim that further compels dismissal of Count II of the complaint.  Specifically, Plaintiff's cause of action for fraudulent inducement runs afoul of the rule against duplicative claims, as Plaintiff attempts to state a claim of fraud incident to his claim of a breach of the parties' contractual relationship asserted in Count I of the complaint.

It "is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." EQT Infrastructure Ltd. v. Smith, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (internal quotation marks and citation omitted);  W.B. David & Co., Inc. v. DWA Commc'ns, Inc., No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (observing that courts applying New York law do not "recognize claims that are essentially contract claims masquerading as claims of fraud").  Indeed, a cause of action sounding in fraud that has its genesis in a contractual relationship between the parties cannot be maintained when the only fraud alleged is a breach of contract. OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc., 952 F. Supp. 120, 122 (N.D.N.Y. 1997); Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006) (stating that a "fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract").  "[S]imply dressing up a breach of contract claim" by including an allegation that the "promisor had no intention, at the time of the contract's making, to perform its obligations thereunder," does not give rise to a claim for fraud or fraudulent inducement and must be dismissed as duplicative under New York law. Telecom Int'l Am., Ltd. V. AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation marks and citation omitted);  Rocanova v. Equitable Life Assur. Soc., 83 N.Y. 2d 603, 614 (N.Y.

App. Div. 1994) ("[A] contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.").

However, "not every fraud claim is foreclosed in an action also involving a contract." Wall, 471 F.3d at 416.  New York courts permit a claim for fraud arising out of a contractual dispute to be brought alongside a claim for breach of the same contract in a single action where the factual allegations comprising the fraud claim are "separate and distinct" from "the allegations undergirding the breach of contract claim."  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996) (quoting Papa's–June Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y.1996)).  Thus, to avoid invocation of the rule barring duplicative fraud claims, a party asserting that it was induced to enter into a contract by way of misrepresentation bears the additional burden of demonstrating either (1) "a legal duty separate from the duty to perform under the contract," (2) "a fraudulent misrepresentation collateral or extraneous to the contract," or (3) "special damages that are caused by the misrepresentation and unrecoverable as contract damages."  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996); see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007).  The Bridgestone/Firestone exceptions recognize that a fraud claim premised on misrepresentations that were made prior to the formation of, and induced the plaintiff to enter into, a contract may co-exist in a single action with a contract claim. Osan Ltd. V. Accenture LLP, 454 F. Supp. 2d 46, 52 (E.D.N.Y. 2006).  The test espoused by Bridgestone/Firestone however, "ensures that contract actions are not improperly converted into fraud actions by mere allegations that a contracting party did not intend to meet its contractual obligations."  Id.

Judged against these benchmark legal principles, the Court finds that the complaint is devoid of allegations that bring Plaintiff's fraud-based claim within one of the three Bridgestone/Firestone exceptions.  As it relates to the first Bridgestone/Firestone exception, Plaintiff has not alleged that Gordon violated a legal duty existing independently of the duty to perform under the contract. [6]  While Plaintiff cites Albermarle Theatre, Inc. v. Bayberry Realty Corp., 277 N.Y.S. 2d 505 (N.Y. App. Div. 1967), as standing for the proposition that Gordon violated a "legal common law duty not to act willfully to destroy the property of another" when Gordon dismantled the Company upon obtaining control over operations (Doc. No. 13 at 15-16), Plaintiff has offered no factual allegations in his complaint from which the Court could plausibly infer that Defendants "wil[l]fully and intentionally . . . performed the[ ] contract . . . in a manner calculated drastically to decrease [Plaintiff's] competitive position and value, to their own substantial benefit," as was the case in Albermarle Theatre.  Id. at 177.  Stated differently, Plaintiff has not claimed that Gordon's conduct was a part of a "larger fraudulent or malicious design to injure [P]laintiff or benefit [D]efendants or in furtherance of some purpose which transcended the breach of the contract itself." [7]  Charles v. Onondaga Cmty. Coll., 418 N.Y.S.2d 718, 721 (N.Y. App. Div. 1979).

With regard to the second Bridgestone/Firestone exception, the purported statements made by Gordon, as pled, are neither collateral nor extraneous to the terms of the Stock Purchase

---

[6] Plaintiff's failure to point to any representation or promise made by Gordon in his individual capacity, separate and apart from any representation or promise made by Gordon in his managerial capacity on behalf of GLD relating to the Stock Purchase Agreement, and Plaintiff's conclusory assertion in his oppositional brief that "Gordon is GLD" (Doc. No. 13 at 22), only bolsters this Court's finding that Plaintiff's fraudulent inducement claim is indistinguishable from his breach of contract claim.

[7] Furthermore, by Plaintiff's own averment, such conduct occurred only after Plaintiff divested himself of control and possession over the Company, and thus, cannot establish reliance.

Agreement.  Gordon's alleged misrepresentations of his intent to fulfill the terms of Stock

Purchase Agreement executed on behalf of GLD and his financial position by assenting to the

terms of the Stock Purchase Agreement, expressing his satisfaction with the completed schedules

required by the Stock Purchase Agreement, accepting possession of the company, and making a

partial payment of one million dollars, are not sufficiently collateral or extraneous to Plaintiff's

alleged breach of the Stock Purchase Agreement. The United States District Court for the

Southern District of New York's analysis of similar allegations of fraudulent inducement of

contract in Crabtree v. Tristar Automotive Group, Inc., 776 F. Supp. 155, 163 (S.D.N.Y. 1991),

offers instructive guidance here.  The plaintiff in Crabtree alleged that defendants: (1) falsely

represented that they would honor their obligations under a stock purchase agreement when, in

actuality, they had no intention of doing so; and (2) repeatedly assured plaintiff that they

possessed the requisite expertise and resources to purchase the automotive company, operate it

profitably, and assume its obligations.  The Crabtree court found that plaintiff's allegations could

not serve as the basis for a claim of fraudulent inducement because "a representation that

performance will be made, even if only implied through the negotiation process, is not distinct

from the contract."  Id. (citations omitted).  The court reasoned that while a promise made with a

preconceived and undisclosed intention of not performing it constitutes a misrepresentation of

present fact upon which an action for fraudulent inducement may be predicated, such a cause of

action for fraudulent inducement requires allegations establishing that a defendant made a

promise to undertake some action separate and apart from his obligations under the express terms

of the contract.  Because the alleged representations relied on by the plaintiff were simply "part

and parcel" of the intention to perform, the fraudulent inducement claim was dismissed as

duplicative of plaintiff's breach of contract claim.

Applying the reasoning of Crabtree to the matter sub judice, it is clear that the verbal and nonverbal representations upon which Plaintiff bases his fraudulent inducement claim, even if construed as promises made with a preconceived and undisclosed intention of future nonperformance of the Stock Purchase Agreement, are simply not separate and distinct from the obligations encompassed within the Stock Purchase Agreement.  See Hudson Optical Corp. v. Cabot Safety Corp., 971 F. Supp. 108, 109 (E.D.N.Y. 1997) ("Although a promise made with a preconceived and undisclosed intention of not performing . . . can give rise to a fraudulent inducement claim, the promise must be collateral or extraneous to the terms of the agreement, not merely a promise to perform under the express terms of the contract, even if made with no intention to abide by the stated intention.") (citations omitted), aff'd,162 F.3d 1148 (2d Cir.1998).  As described above, the alleged statements underlying Plaintiff's fraud claim merely underscore Gordon's participation in the negotiation process and GLD's ability to perform those negotiated contractual obligations set forth in the Stock Purchase Agreement.  See Podlin v. Ghermezian, No. 13 CIV. 4117 WHP, 2014 WL 2601416, at *7 (S.D.N.Y. May 28, 2014), aff'd, 601 F. App'x 31 (2d Cir. 2015), cert. denied, 136 S. Ct. 64 (2015).  These statements concerning Gordon's assent to the negotiated terms of the Stock Purchase Agreement and his commitment to lock GLD into the Stock Purchase Agreement are incorporated into, and indivisible from, the contract itself.  Cf. Forty Cent. Park S., Inc. v. Anza, 14 N.Y.S. 3d 11, 12 (N.Y. App. Div. 2015) (holding that a fraud claim against the manager of a limited liability company was not duplicative of a breach of contract claim against the limited liability company, as the fraud was based upon representations made by the manager that were separate and apart from the limited liability company's obligations under the operating agreement).  Thus, the Court declines to

accept the invitation to characterize Defendants' alleged representations as collateral or extraneous to the Stock Purchase Agreement.

Lastly, Plaintiff has not satisfied the third <u>Bridgestone/Firestone</u> exception by providing sufficient factual averments to support the recovery of special damages unavailable as contract damages caused by the alleged misrepresentation.  <u>Krantz v. Chateau Stores of Canada Ltd.</u>, 683 N.Y.S. 2d 24, 25 (1998) ("[W]ith the exception of the unelaborated request for punitive damages on the fraud claim, plaintiff has not claimed any special damages proximately caused by the false representation that are not recoverable under the contract measure of damages. This is further evidence that the causes of action are duplicative."); <u>see also</u> <u>Briefstein v. P.J. Rotondo Constr. Co.</u>, 187 N.Y.S. 2d 866, 868 (N.Y. App. Div. 1959) ("To say that a contracting party intends when he enters an agreement not to be bound by it is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract.").

As Plaintiff does not allege with requisite particularity the elements comprising a fraud-based claim in accordance with Federal Rules of Civil Procedure 9(b) and 12(b)(6), and instead, restates what is, in substance, a claim for breach of contract, dismissal of Plaintiff's fraud claim is warranted.  Accordingly, the Court will grant Defendants' motion to dismiss Count II of the complaint.

### B.    COUNT III- UNJUST ENRICHMENT

Defendants also move to dismiss Count III of Plaintiff's complaint on the basis that Plaintiff has failed to state a claim of unjust enrichment under New York law against both Gordon and GLD.  (Doc. No. 10 at 18.)

With respect to Plaintiff's unjust enrichment claim against GLD, Defendants argue that dismissal of the unjust enrichment claim is appropriate given that the parties do not contest the

existence of a valid and enforceable written contract between Plaintiff and GLD.  The Court

agrees.  Generally, "a valid and enforceable written contract governing a particular subject

matter ordinarily precludes recovery in quasi contract for events arising out of the same subject

matter."  Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y. 2d 382, 388 (1987).  Indeed, in

circumstances where there is a valid and enforceable written agreement, the scope of which

clearly covers the dispute between the parties," an unjust enrichment claim cannot lie.  Id. at 389.

However, New York courts permit a claim of equitable relief based on the quasi-contractual

theory of unjust enrichment to be pled in the alternative to a claim for breach of contract "where

there is a bona fide dispute as to the existence of a contract or where the contract does not cover

the dispute in issue."  Curtis Props. Corp. v. Greif Cos., 653 N.Y.S.2d 569, 571 (N.Y. App. Div.

1997); see Icebox–Scoops v. Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 114 (E.D.N.Y.

2009).  Here, there is no apparent dispute as to the existence and validity of the Stock Purchase

Agreement.  See CBS Broad. Inc. v. Jones, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006)

(dismissing plaintiff's unjust enrichment claim where neither side contested the validity of the

contract); see also JTH Tax, Inc. v. Gouneh, 721 F. Supp. 2d 132, 139 (N.D.N.Y. 2010) ("While

it is generally impermissible to seek damages in an action sounding in quasi contract where the

existence of [a valid written agreement] is undisputed, . . . unjust enrichment may be pleaded in

the alternative to a claim for breach where the existence of a valid agreement is in dispute.")

(internal punctuation and citations omitted).

    Moreover, Plaintiff's unjust enrichment claim against GLD, premised on allegations that

GLD "accepted and retained the benefits conferred upon them by [Plaintiff] under such

circumstances as would be inequitable for . . . GLD to continue to retain said benefits without

making a payment to [Plaintiff]," directly flows from the purported breach of the Stock Purchase

Agreement. Indeed, the crux of Plaintiff's unjust enrichment claim against GLD is that he has not received adequate compensation for the rights, titles and interests in the Company conferred upon GLD, a transaction memorialized by the Stock Purchase Agreement.  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's unjust enrichment claim against GLD.

With respect to Plaintiff's unjust enrichment claim against Gordon, Defendants argue that Plaintiff has failed to plead facts supporting that Gordon was enriched, as is required to maintain an unjust enrichment claim against a non-signatory to the contract.   To recover under the equitable doctrine of unjust enrichment under New York law, a plaintiff must plead the following elements: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff."  Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) (citations omitted).

Accepting as true the facts alleged in the complaint and affording Plaintiff the benefit of every reasonable inference, the Court finds that the complaint does not contain sufficient allegations to support an unjust enrichment claim against Gordon.  As Defendants have correctly identified, absent from the complaint are any factual allegations of a benefit conferred upon GLD through consummation of the Stock Purchase Agreement that could be attributed to Gordon by virtue of having facilitated stock purchase negotiations between Plaintiff and GLD.[8]  Indeed, Plaintiff has failed to point to any tangible benefit conferred upon, and wrongfully secured by, Gordon individually that rightfully belongs to Plaintiff.  Thus, the Court will grant Defendants' motion to dismiss Plaintiff's unjust enrichment claim against Gordon.

---

[8] The mere fact that Gordon is the manager of GLD, alone, is insufficient to link any benefit obtained by the contracting limited liability company to its managing member.

Therefore, in accordance with the foregoing, the Court will grant Defendants' motion to dismiss Count III of the complaint.

## IV.   CONCLUSION

Based upon the foregoing, the Court will grant Defendants' motion to dismiss Counts II and III of Plaintiff's complaint.[9]  (Doc. No. 8.)  An Order consistent with this Memorandum follows.

---

[9] The Court is aware that Plaintiff has requested leave to amend his complaint in the concluding remarks of his brief in opposition to Defendants' motion to dismiss.  (Doc. No. 13 at 22.)  The Court's adjudication of Defendants' motion to dismiss does not preclude Plaintiff from attempting to seek leave to amend his complaint in accordance with the applicable federal and local rules.  Should Plaintiff pursue amendment of his complaint, he must file a properly supported motion for leave to file an amended complaint together with a proposed amended pleading.  See L.R. 15.1(a).